S10A0102. WINDSOR et al. v. CITY OF ATLANTA.
(695 SE2d 576)

NAHMIAS, Justice.

The trial court dismissed this condemnation case for lack of prosecution pursuant to OCGA § 9-2-60 (b). The property owner, Judith B. Windsor, appeals, arguing that the general five-year rule in OCGA § 9-2-60 (b) and the specific five-year rule for civil cases in OCGA § 9-11-41 (e) are unconstitutional as applied to so-called "declaration of taking" condemnation cases. We disagree and affirm the dismissal of the case.

1. In the mid-1990s, the City of Atlanta was under a federal mandate to address serious deficiencies in its sewage and wastewater conveyance and treatment capacities, including in the Nancy Creek Basin area. A new sewer line was needed, and the City opted for deep rock subsurface tunnel construction over open cut sewer construction to minimize disruption to the surface environment and surrounding community and to reduce the need for ongoing maintenance. After conducting geological surveys, the City chose a path for the sewer tunnel that required a 29-foot easement 166 feet under the surface of Windsor's property.

In June 1995, the City authorized the purchase of the rights-of-way necessary for the project. The ordinance provided for appraisals to determine the just and adequate compensation to be offered, along with a small premium, to the property owners. The ordinance authorized the declaration of taking method of condemnation to acquire the rights-of-way if negotiations failed.[1] The City amended the ordinance in September 2000 to recognize a recently enacted

---

[1] The parties discuss two methods of condemnation in their briefs on appeal: the special master method, see OCGA §§ 22-2-100 to 22-2-114, and the declaration of taking method, see OCGA §§ 32-3-4 to 32-3-20. A third method – the assessor method, see OCGA §§ 22-2-1 to 22-2-86 – is not at issue. The special master method of condemnation affords the owner pre-taking notice and an opportunity to be heard by the special master on the issue of just and

statute as an additional basis for its condemnation plan. See OCGA § 22-3-140 (authorizing any municipality "owning or operating a sewage collection, treatment, or disposal system, a water or waste-water system, . . . or a drain or storm-water system . . . to utilize the declaration of taking method of eminent domain in order to acquire any private property . . . , including easements, for such systems and purposes").

In 2002, based on an appraisal it had obtained, the City offered Windsor $180 for the permanent easement under her property. Windsor declined the offer, as well as a subsequent effort at a negotiated settlement, and on July 18, 2003, the City filed a complaint for condemnation in rem and a declaration of taking and deposited $400 in the registry of the court, which the City alleged was just and adequate compensation for the 29-foot subsurface easement. The trial court entered judgment the same day vesting "full, complete, and unencumbered title" in the City and ordered Windsor to surrender possession of the easement within 60 days. The complaint, declaration, and order were served on Windsor on July 26, 2003.

Windsor filed a "notice of appeal" to the trial court under OCGA § 32-3-14 and a motion under OCGA § 32-3-11 to "set aside, vacate, and annul the declaration of taking, together with any title acquired thereby." The parties extensively briefed a variety of issues in connection with the annulment motion, including Windsor's due process challenge to the constitutionality of the declaration of taking method of condemnation. Following a two-day evidentiary hearing, the trial court denied the motion and certified its order for immediate review. We denied Windsor's application for interlocutory appeal on June 9, 2004, and the remittitur was filed in the trial court on July 12, 2004.

For the next five years, nothing happened in the case, aside from the occasional filing of a notice of a leave of absence by one of the attorneys. Then, on June 6, 2009, Windsor filed a motion under Uniform Superior Court Rule 7.1 to have the matter placed on the trial court's next available pretrial calendar to address the "notice of appeal" challenging the amount of compensation. In this motion, Windsor requested an order extending "any approaching deadline

---

adequate compensation, see OCGA §§ 22-2-102, 22-2-107, 22-2-111, and the special master's decision can be appealed for a de novo determination by a jury, see OCGA § 22-2-112. By contrast, the declaration of taking method allows the government to take title immediately by filing a petition and declaration of taking and paying into the court registry just and adequate compensation as determined by its own appraisal. See OCGA §§ 32-3-6 to 32-3-7. There is no pre-taking notice or opportunity to be heard on the compensation issue. See OCGA §§ 32-3-7 (a), 32-3-13 (a). The property owner can, however, obtain a de novo determination by a jury after the fact. See OCGA §§ 32-3-14, 32-3-16.

under the 'five-year' rule" codified at OCGA §§ 9-2-60 (b) and 9-11-41 (e).

Two days later, on June 8, 2009, the trial court dismissed the case under OCGA § 9-2-60 (b). The court explained that the last order entered by the trial court was the April 7, 2004 order granting Windsor a certificate of immediate review, noting that this Court's remittitur appeared in the file but was never signed by the trial court and did not appear on the docket. The trial court ruled that the case had been dismissed by operation of law on April 7, 2009, two months before Windsor filed her USCR 7.1 motion. Windsor filed a notice of appeal challenging both the June 8, 2009 dismissal order and the March 31, 2004 order denying her annulment motion.

2. We agree with the City that the trial court properly dismissed the case. OCGA § 9-2-60 (b) states that "[a]ny action or other proceeding filed in any of the courts of this state in which no written order is taken for a period of five years shall automatically stand dismissed with costs to be taxed against the party plaintiff." OCGA § 9-11-41 (e), which is part of the Civil Practice Act, similarly provides that "[a]ny action in which no written order is taken for a period of five years shall automatically stand dismissed, with costs to be taxed against the party plaintiff."

We have adopted a bright-line rule for the types of orders that will reset the five-year clock. By adding certainty and objective consistency, the rule furthers the dual statutory goals of preventing trial court dockets from becoming cluttered with unresolved and inactive litigation and protecting parties from dilatory adversaries. See *Dept. of Transp. v. Tillett Bros. Constr. Co.*, 264 Ga. 219, 220 (443 SE2d 610) (1994). Under this rule, "[i]n order to toll the running of the five-year period that results in automatic dismissal for non-action, 'an order must be written, signed by the trial judge, and properly entered in the records of the trial court by filing it with the clerk.'" *Zepp v. Brannen*, 283 Ga. 395, 396 (658 SE2d 567) (2008) (citation omitted).

The Court of Appeals has held, and we agree, that an appellate court order must be both signed by the trial court and entered on the trial court's records in order to reset the five-year clock. See *Kachwalla v. Byrne*, 198 Ga. App. 454, 455 (402 SE2d 74) (1991). Windsor does not dispute, and our review of the record confirms, that the last qualifying order entered in the case was the certificate of immediate review signed by the trial court and entered on the trial court's records on April 7, 2004. Our remittitur order, which was both not signed by the trial court and not entered on its official records, does not qualify.

Windsor also cannot defeat the trial court's dismissal order through reliance on the renewal provisions of the two statutes.

OCGA §§ 9-2-60 (c) and 9-11-41 (e) both authorize "the plaintiff" in an involuntarily dismissed case to file a renewal action within six months of the dismissal, but the property owner in a condemnation case is neither the plaintiff nor a counter-claimant and so cannot take advantage of the renewal provisions. See *Adams v. Cobb County*, 258 Ga. 352, 352 (370 SE2d 748) (1988).

Windsor is left with the argument that the five-year rule is unconstitutional as applied to declaration of taking condemnation cases. Her only support for this claim, however, consists of attacks on the constitutionality of the declaration of taking method in general. In other words, she argues that because the declaration of taking method is unconstitutional, it would be unconstitutional to apply the procedural five-year rule to bar her claims. That is a non sequitur.

Courts regularly enforce procedural rules to resolve cases without regard to the merits of the underlying claims, including constitutional claims. See, e.g., *Walker v. Hale*, 283 Ga. 131, 134 (657 SE2d 227) (2008) (affirming application of procedural bar set forth in OCGA § 9-14-48 (d) to deny constitutional claim raised in habeas corpus petition). Proper application of the five-year rule likewise does not turn on the merits of the underlying case. Whatever the merits, if for five years there is no written order signed by the trial judge and properly entered in the trial court's records, the case is dismissed by operation of law. See *Dept. of Transp. v. Tillett Bros. Constr. Co.*, 264 Ga. at 220 & n. 1. If Windsor wished to further litigate her claims, she had ample time to obtain a trial court order that would have allowed that. She failed to do so, and the trial court therefore correctly dismissed this case.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 17, 2010 —
RECONSIDERATION DENIED JUNE 28, 2010.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, Nicholas S. Papleacos*, for appellant.

*Jackel & Phillips, Dana L. Jackel, Christopher L. Phillips*, for appellee.